**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE: (671) 472-2601

*Attorneys for Defendant*

**FILED**
DISTRICT COURT OF GUAM

JUL 0 5 2007

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

----------

| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 07-00039 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MOTION TO SUPPRESS** |
| RAYMOND IGNACIO DUENAS, JR., | ) | |
| Defendant. | ) | |

----------

### MOTION

COMES NOW the Defendant, RAYMOND I. DUENAS, JR., through counsel, Joseph C. Razzano, Esq., and moves this Honorable Court for an order suppressing all statements made by Mr. Duenas while in custody of law enforcement officers on April 19, 2007. This motion is based on the documents in the Court's file, the oral argument to be presented before the Court, and the Declaration of Raymond Ignacio Duenas, Jr.

///

///

# ARGUMENT

## I. MR. DUENAS' STATEMENT WAS OBTAINED IN VIOLATION OF *MIRANDA V. ARIZONA*.

*Miranda v. Arizona*, 384 U. S. 436 (1966), firmly establishes that before the government can use statements obtained from the defendant resulting from custodial interrogation, it must show both that the police adequately warned the defendant of his rights to remain silent and to have court appointed counsel, and that the defendant knowingly, voluntarily and intelligently waived those rights. The government bears a heavy burden to prove that the defendant made such a waiver. *Brewer v. Williams*, 430 U. S. 387 (1977). Waiver in this context requires the "intentional relinquishment or abandonment of a known right or privilege." *Miranda v. Arizona*, *supra*, quoting *Johnson v. Zerbst*, 304 U. S. 458, 464 (1938).

When Mr. Duenas was initially escorted to the Tumon Precinct, he was in custody and not free to leave. *Rhode Island v. Innis*, 446 U. S. 291, 1980. A person in "in custody" under Miranda when he "has been deprived of his freedom of action in any significant way" *Miranda*, 384 U. S. at 444. The police did not advise Mr. Duenas of his rights before commencing with questioning. Mr. Duenas was threatened, promised leniency, and asked for a lawyer. It was only after the significant questioning had transpired that a waiver card was introduced. The subsequent waiver presented by the government is thus of no consequence.

## II. MR. DUENAS' STATEMENT WAS INVOLUNTARY.

The requirement that statements be voluntary is derived form the privilege against self-incrimination and the Due Process Clause of th Fifth and Fourteenth Amendments. *See,* generally, *Oregon v. Allstate*, 470 U.S. 298, 304 (1985) (comparing the admissibility of statements under *Miranda* and under a Fifth Amendment due voluntariness analysis). Exclusion of involuntary

statements deters the use of coercive police tactics and techniques against the accused. *See Id*. At 321.

The Supreme Court, relying on the Fifth Amendment, has made it clear that involuntary statements should be suppressed:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded in whole or in part upon an involuntary confession, without regard to the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

*Jackson v. Denno*, 378 U. S. 368, 376 (1964)( citations omitted). ***See also Greenwald v. Wisconsin***, 380 U. S. 519 (1968) To make a showing of voluntariness, "it must be shown that in fact the confessor has a free will and intellect whether or not the [police] had any reason to doubt its presence or suspect its absence." ***Pea v. United States***, 397 F.2d 627, 632 (D.C. Cir. 1968). The government bears the burden of proving by a preponderance of the evidence that a defendant's statement was made voluntarily. ***Lego v. Twomey***, 404 U. S. 477 (1972). ***United States ex rel. Hayward v. Johnson***, 508 F.2d 322, (3rd Cir. 1975).

In determining the admissibility under the Due Process clause of an accused admissions to police,

> the ultimate test remains that which has been the only clearly established test of Anglo- American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its make? If it is , if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity of self determination critically impaired, the use of his confession offends due process... The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession. ***Columbe v. Connecticut***, 367 U. S. 602 (1961).

The Supreme Court has held that "coercive police activity is a necessary predicate to the

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE (671) 477-9891-4

finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Courts' traditional focus on the mental state of the defendant to discern the voluntary nature of a statement "does not justify a conclusion that a Defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Id*. At 164.

The determination of voluntariness of a confession or admission requires consideration of the "totality of circumstances," including personal history, level of educational attainment, and physical condition of the accused, as well as the circumstances in which police officers elicited the statement. *Crane v. Kentucky*, 476 U.S. 691 (1986) (evidence that an uneducated teenager was confined in a small, windowless room of a juvenile detention facility for a protracted period of time, that six police officers surrounded him during his interrogation, and that officers denied the defendant's requests to contact his mother are relevant to a consideration of the voluntariness of defendant's confession); *Mincey v. Arizona*, 437 U.S. 385, 400 (1978) (ruling that a statement given by appellant was involuntary and inadmissible because the defendant lay in a hospital intensive care unit with "unbearable leg pain," repeatedly expressed his wish not to submit to questioning, and appeared "confused and unable to think clearly" at the time of his interrogation); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (citing, as circumstances which may affect a determination of voluntariness, the youth of the accused, the level of education or intelligence, the absence of advice to the individual about his constitutional rights, the length of detention, the use of physical force to extract a confession, and "the repeated and prolonged nature of the questioning").

The Supreme Court first recognized the prospect of impermissible coercion in cases of physical abuse. *See Brown v. Mississippi*, 297 U.S. 278, 287 (1963) (holding confessions to be involuntary, where police officers subjected defendants to threatened death by hanging, whipping,

and slashing of their backs with leather straps and belts). The use of physical coercion by police officers will result in the suppression of challenged statements. In *U.S. v. Jenkins*, the Ninth Circuit suppressed statements made within five hours after police officers beat the defendant and threatened his life, shuttled him between a hospital and prison, and question him immediately upon his return from the hospital in the early hours of the morning. *See U.S. v. Jenkins*, 938 F.2d 934, 939-940 (9th Cir. 1991). The court stated that "in some cases, the need for such an individual calculus [regarding the voluntariness of statements] is obviated by the egregiousness of the custodian's conduct," and the "confessions accompanied by physical violence wrought by the police have been considered per se inadmissible." *Id*. at 938 (internal citations omitted).

A statement that resulted from psychological coercion is inadmissible for any purpose, regardless of officers' actual compliance with the technical requirements of *Miranda*. *See Henry v. Kernan*, 197 F.3d 1021, 1026-28 (9th Cir. 1999) (ruling a statement elicited from the defendant to be inadmissible, when police officers deliberately violated the defendant's Fifth Amendment rights by continuing with their interrogation for one hour after the defendant unequivocally requested that assistance of an attorney by using various coercive tactics, such as instructing the defendant that "...what you tell us we can't use against you right now," leaving the defendant "shaken, confused, and frightened, crying in parts and frequently asking for forgiveness" after his interrogation).

Mr. Duenas did not appreciate the consequences of speaking to the agents given that he was initially not advised of his rights at the time of the initial interrogation and because of the circumstances surrounding the arrest of Mr. Duenas and his wife. Mr. Duenas was awakened to officers who were yelling, violent and beating him and his wife and harassing his mother and child. Mr. Duenas was injured, tired, scared, worried for himself and his family and totally confused and disoriented. He was taken to the Tumon Precinct and was shuffled around to different rooms and

questioned by several different officers from various law enforcement agencies, was taken to the hospital, offered promises of leniency, threatened and held for over 12 hours. Mr. Duenas contends that his will was so overborne that his waiver and statements were not a product of his free will.

### III. MR. DUENAS' STATEMENT WAS INVOLUNTARY BECAUSE OF THE PROMISES OF LENIENCY.

In the instant case, Mr. Duenas cooperated with the officers because he was promised benefits and offered leniency. More specifically, Officer Smith told Mr. Duenas that if he could tell him where to locate Franklin Atoigue, he will do what he can to help Mr. Duenas with what went down at Mr. Duenas' mom's place and the trouble that he was in. Additionally, Officers Smith and Polilo threatened Mr. Duenas that if he did not cooperate, Mr. Duenas would go to jail for a long time and "that he would never see his mom, wife or children again." Meaning, he was promised that if he cooperated, he would not go to jail for a long time and he would see his family

Coercive police activity, including threats of future punishment or promises of leniency, is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *See also McKune v. Lile*, 536 U.S. 24, footnote 4 (2002). However, absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. *Connelly*, 479 U.S. at 164. "The Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion." *United States v. Huynh*, 60 F.3d 1386, 1388 (9th Cir. 1995). The test for voluntariness is whether, viewing the totality of the circumstances, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *U.S. v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994)

(quoting *U.S. v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988)).

> A statement is involuntary if it is extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, or by the exertion of any improper influence. This broadly stated rule has not been applied to invalidate, per se, all statements made by a suspect in response to a promise made by law enforcement personnel. The promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances. An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect.

*U.S. v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988) (citations omitted). *See also U.S. v. Shears*, 762 F.2d 397 (4th Cir. 1985).

Mr. Duenas asserts that the promises of leniency made by officers Smith and Polilo, with threats that he would go to jail for a long time and would never see his family again, coupled with the physical violence inflicted on Mr. Duenas at the time of his arrest, his lack of sleep, his injuries, his disorientation and confusion at being interrogated by many different law enforcement officers and agencies, and the length of his custodial interrogation so overcame Mr. Duenas' will that the statements he made at the Tumon Precinct were involuntary and must be suppressed.

**WHEREFORE,** for these reasons and any other such reasons as shall appear at the hearing of this matter Mr. Duenas respectfully request that the Court enter an Order suppressing the waiver and statements obtained from him on or about April19, 2007.

*Respectfully submitted* this 5th day of July, 2007.

TEKER TORRES & TEKER, P.C.

By: _____
JOSEPH C. RAZZANO, ESQ.
Attorneys for Defendant